IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 6, 2000 Session

## VIRGINIA RUTH MOORE v. DWIGHT STEVEN MOORE

**Appeal from the Circuit Court for Warren County**
**No. 10081     Charles Haston, Judge**

---

### No. M1999-02301-COA-R3-CV - Filed December 13, 2000

---

In this divorce case, the husband argues that the trial court erred in the way it classified and distributed the parties' marital property. We agree that the trial court's implied classification of the parties' home on Pleasant Cove Road was erroneous as a matter of law, but we find that its disposition of the property was nonetheless within the court's authority and discretion. We accordingly modify the final decree to reflect our view of its correct classification, but otherwise affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed as Modified and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

Thomas F. Bloom, Nashville, Tennessee, for the appellant, Dwight Steven Moore.

Sam Wallace, Sr., Nashville, Tennessee, for the appellee, Virginia Ruth Moore.

**OPINION**

**I.**
**A LONG-TERM RELATIONSHIP, A MARRIAGE AND A DIVORCE**

In April of 1976, Dwight Moore and Virginia Ruth Greene Vanatta started living together. They bought and exchanged wedding bands and held themselves out as man and wife, but did not actually marry until January 14, 1986. The record contains joint income tax returns in the names of Dwight S. Moore and spouse Virginia R. Moore, dating from 1979 until 1986.

In 1977, Mr. Moore bought a 6.5 acre tract of land on Pleasant Cove Road in Warren County, financing the property through a six-month note, and taking the deed in his name only. Ms. Moore testified that she helped make the payments on the note. The parties subsequently had a one-half

acre portion of the property surveyed, and borrowed money to build a house on that parcel. A Deed of Trust, executed on the one-half acre containing the house, was signed "Dwight S. Moore and wife Virginia R. Moore." Several more loans were taken on the property, with both parties signing the notes, and contributing to the payments. The purpose of each of the loans was to produce funds for business ventures, all of which eventually failed.

Aside from the marital home, another piece of property at issue is a 48 acre farm located on Randall Hitchcock Road. That property was owned by Ms. Moore's mother, Ellen Gibbs, who lived in a mobile home on the property. Another mobile home on the land was occupied by Virginia Moore's former daughter-in-law. In September of 1995, Ms. Gibbs conveyed the property to her son James Greene, by warranty deed, expressly reserving a life estate for herself. No consideration passed for the conveyance.

Mr. Greene testified that he was worried that the property might pass outside his family if something happened to him, so shortly thereafter, he asked a friend to draft a deed to convey a one half-interest in the property to his sister. The resulting deed conveyed the interest to "Ruth Moore et vir Steve Moore," and contained no mention of the life estate. Mr. Greene did not object when he saw Mr. Moore's name on the deed, but he testified that the conveyance was "for love and affection," and that he intended the property to go only to Ms. Moore.

On November 8, 1998, Virginia Moore filed a Complaint for Divorce on the grounds of irreconcilable differences, or in the alternative, inappropriate marital conduct. Her complaint stated that she and her husband had been separated since October 3, 1998, but that he was still staying in their home. Dwight Moore's answer denied the allegations of the complaint, and asked that it be dismissed.

On February 2, 1999, the court granted Ms. Moore's motion for temporary alimony, and ordered her husband to pay pendente lite alimony of $1,000 per month, with Ms. Moore to make the first and second mortgage payments on the marital home from those funds.

On March 19, 1999, the court gave its approval to an Agreed Order declaring the parties divorced, and scheduling a hearing for the purpose of determining the division of the marital assets and debts. A hearing was conducted before a Special Master on May 11, 1999, so he could make recommendations on property division. The Master's recommendations were filed with the trial court three days later.

Among other things, the Master recommended that the Pleasant Cove Road property be sold, and the proceeds be split between the parties after the indebtedness was paid off, and that Virginia Moore retain ownership of the Randall Hitchcock Road farm. Although both parties filed exceptions to the Master's recommendations, the trial court confirmed his findings on October 22, 1999, reserving the issue of alimony for a later hearing.

The hearing on the issue of alimony was conducted on November 9, 1999. In the Final Decree of Divorce, filed November 24, 1999, the trial court ordered Dwight Moore to pay his wife $1,000 per month in alimony, for a period of two years. The trial court granted Ms. Moore's subsequent motion to amend the final decree to require the husband to pay an additional $250 per month in alimony until the sale of the marital home, to help defray the cost of the monthly mortgage payments. This appeal followed.

## II.
### THE MARITAL HOME

Tenn. Code. Ann. § 36-4-121 defines the power of the trial court to distribute marital property pursuant to divorce. The statute authorizes the trial court to "equitably divide, distribute or assign the marital property between the parties without regard to marital fault in proportions as the court deems just." To accomplish this purpose, the court may divest and reinvest title to the property, and/or to order the sale of the property so that the proceeds may be divided between the parties. Although marital property is subject to division, separate property is not.

Section (b)(1)(A) of the same statute defines marital property as follows:

"all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, . . . .

Separate property is defined as "[a]ll real and personal property owned by a spouse before marriage." Tenn. Code. Ann. § 36-4-121(b)(2)(A).

Although neither the Special Master nor the trial court specifically stated that they found the home on Pleasant Cove Road to be jointly owned by the parties, such a classification is implicit in the Special Master's decision to include it in his recommended distribution of marital property. The appellant argues, however, that the marital home is not marital property, but rather his own separate property, because he acquired it in his own name before he and his wife formalized their relationship.

The appellee for her part argues that Mr. Moore should be estopped from denying that the property was marital, because the parties were holding themselves out as married when the property was acquired. Alternatively, she asserts that she and her husband were implied partners in the business of buying and selling property, and that she therefore had an interest in the property that rendered it subject to equitable division.

These same arguments were recently considered by our Supreme Court in *Martin v. Coleman*, 19 S.W.2d 757 (Tenn. 2000), another case in which the Court was asked to divide property that one party acquired during an extensive period of unmarried cohabitation with the other.

Robert and Dolores Coleman had been married to each other once, and divorced. They reunited, but never remarried, living together and holding themselves out as husband and wife for sixteen years. During that period, Mr. Coleman purchased a used car business, using the couple's jointly owned house as collateral to finance the purchase. Mr. Coleman later bought the lot on which the business was located. The purchase was made in his name only, though Ms. Coleman signed the loan documents.

When the parties separated, Ms. Coleman filed a complaint for divorce, alleging a marriage by estoppel and asking for division of the marital assets, including Mr. Coleman's business, and his 401(k) from a former job. The trial court stated that "equity ought to require this relationship to be considered marriage by estoppel," but declined to make such a ruling because it recognized that would be contrary to case law. In affirming this portion of the trial court's judgment, the Supreme Court stated,

> "In Tennessee, marriage is controlled by statute, and common-law marriages are not recognized. Our courts have recognized marriage by estoppel when parties have believed in the validity of their marriage and have evidenced that belief by cohabitation. The doctrine of marriage by estoppel is applied in exceptional cases. It does not apply in cases where the parties knowingly live together in an unmarried state and are privileged to discontinue that relationship at will." (Citations omitted)

19 S.W.3d at 760.

The trial court intended to divide the property equally, however, and it found a rationale to do so in the theory that an implied partnership existed between the parties during the duration of their cohabitation. The Supreme Court rejected this theory and reversed the trial court, finding that an implied partnership could not be inferred from the act of cohabitation alone, but that it only arises "when it appears that the parties have entered into a business relationship for profit, combining their property, labor, skill, experience or money." 19 S.W.3d at 761. An example of such a relationship within the context of cohabitation may be found in *Bass v. Bass*, 814 S.W.2d 38 (Tenn. 1991).

The proof showed that Ms. Coleman's participation in the used car business was minimal at best, and that she made no contribution to the 401(k) except for her role as a homemaker. While Ms. Coleman's contribution as a homemaker could be considered in dividing marital property, *see* Tenn. Code. Ann. § 36-4-121(b)(1)(B), it was not sufficient to establish an implied partnership.

In the present case, the evidence showed that in 1978, the parties sold one piece of property that Virginia Moore had owned before meeting Dwight Moore, and that they bought another piece of property in 1984, and sold it a year later. This does not even come close to establishing an implied partnership to buy and sell properties as a business.

Even if the home at Pleasant Cove Road was Mr. Moore's separate property, however, Ms. Moore insists that she is entitled to a share of it under the provisions of Tenn. Code. Ann. § 36-4-121(b)(1)(B) and (C), which state:

> (B) "Marital property" includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation and the value of vested pension, retirement or other fringe benefit rights accrued during the period of the marriage.

> (C) As used in this subsection, "substantial contribution" may include, but not be limited to, the direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager, together with such other factors as the court having jurisdiction thereof may determine.

The problem with this theory is the paucity of proof as to Ms. Moore's contribution to the preservation and appreciation of the property. She testified that she helped to make the mortgage payments on the property, but provided no details as to the magnitude of her contribution. Mr. Moore maintains that the gross amount was minimal, and that it was offset by the financial drain resulting from the extended stay in the home of Ms. Moore's two sons from a previous marriage, their wives and their children. Further, while we may find it plausible that Ms. Moore made a substantial contribution to the preservation of the home in her role as homemaker, there is no proof in the record as to any such contribution.

It thus appears to us that under the statutes governing the distribution of marital property, the appellee has not overcome the presumption that the Pleasant Cove Road property is the husband's separate property, and we cannot fully approve any ruling that implies otherwise. This does not end the story, however, and we will continue our discussion of the marital home in the section of this opinion that deals with alimony.

### III.
### THE RANDALL HITCHCOCK ROAD FARM AND THE 401(K)

The trial court awarded the farm on Randall Hitchcock Road to the wife, and ordered any interest the husband may have had in the property divested out of him and vested in her. The husband argues that since it was acquired in both their names during the course of the marriage, the farm should be considered joint property, and it should be divided equally between the parties.

Mr. Moore points out that under Tennessee law, unless a deed is ambiguous, the intention of the grantor is to be determined from its four corners. *Hardin v. Hardin*, 979 S.W.2d 314 (Tenn. Ct. App. 1998); *Bennett v. Langham* 383 S.W.2d 16 (Tenn.1964). Thus, he contends, James Greene's testimony as to his intention to convey the property only to his sister is irrelevant, because the deed unambiguously grants the property to both parties. He also argues that even if we disagreed

with his analysis, he would still be entitled to a share in the property because he contributed to its preservation and appreciation, by building fences and corrals on it, fertilizing it, and maintaining cattle on it. *See* Tenn. Code. Ann. § 36-4-121(b)(1)(B).

The trial court did not characterize the property as either marital property or as the wife's separate property, but simply awarded it to her. We believe that the husband's argument that the property has to considered marital property is correct. However, it is well established that an equitable division of martial property is not necessarily an equal division, whether the court is dealing with a single piece of property or with the entire marital estate. *Barnhill v. Barnhill*, 826 S.W.2d 443 (Tenn. Ct. App. 1991); *Ellis v. Ellis*, 748 S.W.2d 424 (Tenn. 1988).

Trial courts have been granted great discretion when dividing marital property. *Loyd v. Loyd,* 860 S.W.2d 409, 411 (Tenn. Ct. App. 1993); *Harrington v. Harrington*, 798 S.W.2d 244, 245 (Tenn. Ct. App.1990). Accordingly, their decisions are entitled to great weight on appeal, *Edwards v. Edwards*, 501 S.W.2d 283, 288 (Tenn. Ct. App.1973), and are presumed to be correct unless the evidence preponderates otherwise. *Mondelli v. Howard*, 780 S.W.2d 769, 772 (Tenn. Ct. App.1989).

In the present case, both parties were awarded a substantial portion of the marital estate. According to the Rule 15 Table appended to both parties' briefs, much of the property was evenly split between the husband and wife, including cattle, farm equipment, and a piece of real property in McMinnville with a value of $15,000. The husband was awarded the full value of his 401(k) retirement account ($18,000-$20,000), his guns (worth at least $4,500 according to his own estimates), his tools ($2,500-$7,500) and his coin collection (no value given). Aside from the Randall Hitchcock Road farm, the wife was awarded a Certificate of Deposit worth $2,300, personal property worth $3,000, and a telephone company refund credit worth $250.

The record shows that the 48 acre farm was mostly very poor land, but Mr. Moore testified that similar land in the same area sold for between $1,800 and $2,000 per acre. If true, that would give Ms. Moore's share of the property a value between $43,200 and $48,000. In light of the overall distribution of the marital property, and of her family's connection to the land, we do not believe that the trial court abused its discretion by granting the farm property solely to Ms. Moore, and we affirm the award.

Another piece of property in dispute was Mr. Moore's 401(k) retirement account. The proof showed that this account was entirely acquired during the marriage of the parties, indisputably making it marital property. *See* Tenn. Code. Ann. § 36-4-121(b)(1)(B), supra, and *Batson v. Batson*, 769 S.W.2d 849, 857 (Tenn. Ct. App. 1988). Ms. Moore argues that the trial court erred in awarding it to her husband, and contends that she should be entitled to half of it. We believe, however, that in light of the award to the wife of the Randall Hitchcock Road farm, it is equitable to award the husband the entire amount of his 401(k).

# IV.
## ALIMONY

Tenn. Code. Ann. § 36-5-101 sets out the factors for the courts to consider in awarding alimony as follows:

(A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(C) The duration of the marriage;

(D) The age and mental condition of each party;

(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36-4-121;

(I) The standard of living of the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Elsewhere, this court has stated that the most important factors for the courts to consider are the need of the obligee spouse, and the ability of the obligor to pay. *Loyd v. Loyd*, 860 S.W.2d 409 (Tenn. Ct. App. 1993).

Under either formulation, it is clear that Virginia Moore is entitled to alimony from Dwight Moore. The proof showed that Ms. Moore was sixty-two years of age at the time of divorce and only had an eighth grade education. She is unemployed, and her only regular income is $399 per month in Social Security retirement benefits. Her monthly living expenses, including mortgage payments

amount to $1,680. Ms. Moore has serious health problems, and it is uncertain to what extent she will be able to work to supplement her Social Security.

As we stated above, the parties married on January 14, 1986. In that same year, Mr. Moore began working as a superintendent in the construction of new gas station/convenience stores. This proved to be a demanding but lucrative job, and by the time of divorce, he was earning about $68,000 a year. However, the forty-eight year old Mr. Moore also suffers from health problems, and if they worsen, he may not be able to continue in his job.

The trial court awarded Ms. Moore $1,000 per month in alimony, to be paid for twenty-four months, or until her death or remarriage, whichever comes sooner. Though the trial court did not specifically say so, this award of temporary support appears to fall under the category of rehabilitative alimony. The Legislature established rehabilitative alimony as a separate class of spousal support, distinct from alimony in solido or periodic alimony, and has specifically stated that it should be awarded where there is any possibility of an economically disadvantaged spouse becoming financially independent of a former spouse.

In view of her age, health, and lack of skills, it appears unlikely that Ms. Moore will be able to fully rehabilitate herself, but she should be encouraged to make the attempt. If she does not succeed, then she will be able to apply to the court for a more permanent arrangement, because an award of rehabilitative alimony "remain[s] within the court's control for the duration of such award, and may be increased, decreased, terminated, or otherwise modified, upon a showing of substantial and material change in circumstances." Tenn. Code. Ann. § 36-5-101(d)(2). *See also Crabtree v. Crabtree*, 16 S.W.3d 356 (Tenn. 2000).

We accordingly affirm the trial court's alimony award. It appears to us, however, that even with that alimony, Ms. Moore remains in need of further financial assistance. The most equitable way to provide such assistance is through an award of alimony in solido. Such alimony is generally awarded out of a spouse's estate. *Houghland v. Houghland*, 844 S.W.2d 619, 622 (Tenn. Ct. App.1992), rather than out of an expectation of future earnings. *Aleshire v. Aleshire*, 642 S.W.2d 729, 733 (Tenn. Ct. App.1981).

As the trial court no doubt recognized, the most readily available source of additional funds for both parties would be through the sale of the marital home on Pleasant Cove Road. The proof showed that the home had a value of $95,000, encumbered by mortgage debts of about $26,000. Therefore if it were sold, with the proceeds divided equally between the parties, each would receive over $30,000. We accordingly affirm the court's order for the sale of the home, and for the division of the proceeds, but we declare the award to the wife to be alimony in solido rather than division of marital property. Though this might appear to be a distinction without a difference, we do not think so. It appears to us that the trial court reached the most equitable result, and we only modify its decree for the purpose of making certain that it arrives at that result by a legally correct route.

## V.

The order of the trial court is affirmed as modified. Remand this cause to the Circuit Court of Warren County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant, Dwight Steven Moore.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.